COLE NATIONAL CORPORATION, A CORPORATION OF THE STATE OF OHIO, PLAINTIFF-APPELLANT, v. STATE BOARD OF EXAMINERS OF OPHTHALMIC DISPENSERS AND OPHTHALMIC TECHNICIANS, STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued September 15 and 28, 1970—Decided December 7, 1970.

*Mr. Alvin M. Stein,* of the New York Bar, argued the cause for appellant (*Messrs. Milton, Keane & DeBona,* attorneys; *Mr. Thomas J. Brady,* of counsel).

*Mr. Stephen Skillman,* Assistant Attorney General, argued the cause for respondent (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney; *Mr. Fred R. Gruen,* Deputy Attorney General, on the brief).

*Mr. Robert P. McDonough* argued the cause for The Guild of Prescription Opticians of New Jersey, Inc. and The Society of Dispensing Opticians of New Jersey, Inc., *amici curiae (Messrs. McDonough, Murray & Meeker,* attorneys).

The opinion of the court was delivered by

HANEMAN, J. Plaintiff challenges the validity of an administrative rule promulgated by defendant. The Appellate Division sustained the validity of the rule, 107 *N. J. Super.* 278 (1969). This Court granted plaintiff's petition for certification, 55 *N. J.* 449 (1970).

Plaintiff, an Ohio corporation, is engaged in the manufacture and sale of eyeglasses, lenses, frames and related appurtenances. It conducts its business in 27 states and the District of Columbia at approximately 300 locations, 175 of which are in Sears, Roebuck & Co. (Sears) stores. Plaintiff intends to operate in Sears stores in New Jersey. The conduct of that business, as hereafter appears, is contingent upon its ability to employ a licensed Ophthalmic Dispenser (Dispenser).

The "sale, dispensing and supplying of all ophthalmic appliances, eyeglasses, or ophthalmic lenses to the ultimate wearer or consumer" is governed by *N. J. S. A.* 52 :17B–41.1 *et seq.* The statute creates a State Board (Board) of Examiners of Ophthalmic Dispensers and Ophthalmic Technicians (Technicians). The Board, at its creation, was to be comprised of four Dispensers and one Optometrist. The original Optometrist, after his term expired, was to be replaced by a fifth Dispenser. The Board is now composed of five Dispensers. Sales may be made only by Dispensers licensed and regulated by the Board. The Board is authorized to adopt rules "necessary to give full force and effect"

to the provisions of the act and to regulate the practice of Ophthalmic Dispensers and Technicians. *N. J. S. A.* 52:17B–41.13.

Dispensers are defined by *N. J. S. A.* 52:17B–41.5 as:

A person practices ophthalmic dispensing within the meaning of the provisions of this act relating to ophthalmic dispensing who prepares and dispenses lenses, spectacles, eyeglasses or appurtenances thereto to the intended wearers thereof on written prescriptions from physicians or optometrists duly licensed to practice their profession, and in accordance with such prescriptions, interprets, measures, adapts, fits and adjusts such lenses, spectacles, eyeglasses or appurtenances thereto to the human face for the aid or correction of visual or ocular anomalies of the human eyes.

Technicians are defined by *N. J. S. A.* 52:17B–41.5 as:

One having a knowledge of optics and skilled in the technique of producing and reproducing ophthalmic lenses and kindred products, and mounting same to supporting materials.

On February 16, 1955 the Board adopted a rule which prevented Dispensers and Technicians from practicing in other than their own names. On November 20, 1963, the Board adopted a substitutionary rule in the identical language of the original rule, except that it eliminated the prohibition as to Technicians. No reason is articulated by the Board for the initial inclusion and subsequent exclusion of Technicians. The substitutionary rule, designated Rule 28, which is here involved, reads as follows:

Rule 28. On and after February 16, 1955, no persons licensed to practice as an Ophthalmic Dispenser may practice as such other than under their own name. The use of trade names or corporate names by an Ophthalmic Dispenser is hereby specifically prohibited. This regulation will have no effect on those Ophthalmic Dispensers using a trade name or a corporate name prior to February 16, 1955.

The Board did not hold any hearings in the course of adopting the said rule. The Board's minutes disclose, how-

ever, that the only articulated reason for such promulgation was an opinion of a Deputy Attorney General that a "licensee cannot operate under a trade style or corporate name unless he was using it before the law went into effect." The record discloses that there are presently 36 firms practicing ophthalmic dispensing in a trade or corporate name who were so practicing prior to February 16, 1955.

Plaintiff argues, *inter alia,* alternatively, that Rule 28 is invalid in that it is (1) not reasonably related to the declared public policy of the statute, *i. e.,* "to protect the public health, welfare and safety," (2) not within the scope of the legislatively delegated authority, and (3) unconstitutional in that it arbitrarily discriminates against and denies plaintiff the equal protection of the law.

Although there is no statutory provision which expressly prevents a Dispenser from practicing other than in his own name, defendant argues, that the power to prevent such conduct by rule, necessarily arises from *N. J. S. A.* 52:17B–41.13 which provides:

The board shall be authorized and empowered to promulgate such reasonable rules and regulations which shall be necessary to give full force and effect to the provisions of this act and to regulate the practice of ophthalmic dispensers and ophthalmic technicians in this State within the meaning hereof; *provided, however,* such rules and regulations are not inconsistent with the provisions of this act.

Defendant rationalizes that the adoption of Rule 28 is in furtherance of the statutory purpose "to protect the public health, welfare and safety by providing for the regulation of the sale, dispensing and supplying of all ophthalmic appliances, eyeglasses, or ophthalmic lenses to the ultimate wearer or consumer in this State." *N. J. S. A.* 52:17B–41.1 *et seq.* It seeks to justify this conclusion by reasoning that as the statute refers solely to the licensing of individuals as Dispensers, only individuals may engage in the business of the sale, dispensing or supply of the above enumerated articles and it follows as a consequence that corporations, not being

licensable, are impliedly barred from conducting such business. Defendant proceeds with its argument that, as under the terms of the act corporate practice could thus not be regulated through licensure, it must be eliminated in the public interest to prevent such practices as "solicitation of customers through chasers or steerers, fraudulent advertising, and kickback arrangements with optometrists."

At the outset it should be recognized that administrative rules have in their support the rebuttable presumption of validity if they come within the ambit of delegated authority. Unless clearly *ultra vires* on their face, the person attacking them has the burden of proving otherwise. *In re Weston*, 36 *N. J.* 258 (1961), *cert. denied*, 369 *U. S.* 864, 82 *S. Ct.* 1029, 8 *L. Ed.* 2d 84 (1962); *Consolidated Coal Co., et al, v. Kandle, et al*, 105 *N. J. Super.* 104 (App. Div. 1969) *affirmed* 54 *N. J.* 11 (1969). Rule 28 does not upon its face come within the ambit of the Board's delegated authority as the apparent consequence of prospectively preventing a licensed Dispenser from practicing except in his own name, effectively prevents everyone other than a licensed Dispenser from participating in the ophthalmic business. Licensed Dispensers are thereby immunized against competition and enjoy an exclusive control of the market. This is patently not the purpose for which the statute was enacted.

There is nothing in the act which could reasonably lead to the conclusion that the legislature intended a licensed Dispenser to be self-employed and to prohibit his employment by an unlicensed employer — private or corporate. There is absent any statutory language leading to that conclusion nor do the statutory provisions give rise to an implication that such a result should or could be implied.

The Board is not helpless to enforce compliance with its regulations by means other than barring an unlicensed entrepreneur. The short answer to defendant's argument that it is powerless to police the conduct of the business except by eliminating all but licensed Dispensers from the trade, is that there is available an adequate alternative measure.

The Board could by rule provide for the suspension or revocation of the license of a Dispenser in the employ of any non-licensed Dispenser participating in conduct proscribed by the Board. In this manner, the control of sales operation and promotion could be accomplished, as without the employment of a licensed Dispenser an unlicensed entrepreneur could not sell or dispense "lenses, spectacles, eyeglasses or appurtenances." *N. J. S. A.* 52:17B–41.

Further, defendant has not sought to, nor can we see how it could justify the continued conduct of the ophthalmic business by the 36 firms operating other than in the name of a licensed Dispenser under the "grandfather" clause of Rule 28. All of defendant's arguments regarding non-ability to regulate the conduct of the ophthalmic trade unless the business is operated solely in the name of a licensed Dispenser apply with equal force to these 36 firms. If there be any merit to defendant's statement of the purpose of the rule, the continuance in business of these firms would as well do violence to the spirit of the statute and would continue the evil against which it is allegedly directed. The inclusion in the rule of an exception favoring those engaged in the business at the time of the adoption of the rule, by a board composed of persons engaged in or associated with the trade, and to whose advantage the rule would redound, is typical of "guild" legislation and points to the true purpose of said rule. See *Ind. Elec., etc. Ass'n v. New Jersey Bd. of Ex'rs., Elec. Contr'rs,* 48 *N. J.* 413, 420 1967). The *bona fides* of defendant's statement of the purpose of the rule is seriously impugned by the mere presence of such an exclusionary provision.

Defendant also rationalizes that Rule 28 "harmonizes" *N. J. S. A.* 52:17B–41.1 with *N. J. S. A.* 45:12–19.1 as Optometrists who are specifically exempted from the operation of the subject statute, were barred from practicing their professions under the latter statute "under a name other than his own." Apparently defendant conceives that the prohibition against Optometrists, so practicing, establishes

some sort of a policy for Ophthalmic Dispensers. It is difficult to follow this argument. In any event it must be remembered (1) the legislature has declared Optometry to be a profession, something it did not do in the Dispenser statute, (2) Optometrists were exempted from the present statute, and (3) no prohibition against doing business except in the name of a licensed Dispenser was contained in *N. J. S. A.* 52:17B–41.1 *et seq.* The fallacy in defendant's conclusion is further highlighted by the fact that when the legislature desired in 1955 to declare corporate practice of Optometry, which had been permitted since 1914, to be illegal, it did so by express statute. See *Jaeckle v. L. Bamberger & Co.,* 119 *N. J. Eq.* 126 (Ch. 1935) *affirmed* 120 *N. J. Eq.* 201 (E. & A. 1936); *Weston v. New Jersey State Board of Optometrists,* 32 *N. J. Super.* 502 (App. Div. 1954). We find no merit in this argument.

There is, therefore, no legitimate need in the furtherance of the public purpose of the statute to say that a licensed Dispenser may not be employed by anyone except another licensed Dispenser. The absence of such necessity makes Rule 28 invalid. It results in favoring one group of merchants over the other. The dominant purpose, rather than the incidental impact of said rule, is the protection and advancement of the economic interest of licensed Dispensers against competition. Rule 28 is in effect "guild" legislation and does not come within the ambit of the authority delegated by *N. J. S. A.* 52:17B–41.1 *et seq.* Certainly it is not in the public interest to assume that the legislature intended to vest in a board composed solely of licensed Dispensers the power to prevent anyone other than a licensed Dispenser from engaging in the trade. To the contrary it is against the public interest to so restrict competition. See *Reingold v. Harper,* 6 *N. J.* 182 (1951); *Ind. Elec., etc. Ass'n v. New Jersey Bd. of Ex'rs., Elec. Contr'rs.,* 48 *N. J.* 413 (1967).

It becomes unnecessary to consider any of the other arguments advanced by either party.

Reversed.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.