162 N.J. Super. 538 (1978)
394 A.2d 96
ELIZABETH IUPPO, INDIVIDUALLY AND ON BEHALF OF HER MINOR SON MARC IUPPO; KATHERINE SELF-RIDGE, AND METROPOLITAN ECUMENICAL MINISTRY, INC., APPELLANTS,
v.
FRED G. BURKE, COMMISSIONER OF EDUCATION; AND NEW JERSEY STATE BOARD OF EDUCATION, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 27, 1978.
Decided September 13, 1978.
*540 Before Judges FRITZ, BOTTER and ARD.
Mr. Stephen Eisdorfer argued the cause for appellants.
Ms. Mary Ann Burgess, Deputy Attorney General, argued the cause for respondents (Mr. John J. Degnan, Attorney General of New Jersey, attorney; Mr. William F. Hyland, former Attorney General of New Jersey, and Mr. Stephen Skillman, Assistant Attorney General, of counsel and on the brief).
The opinion of the court was delivered by BOTTER, J.A.D.
By notice of appeal filed on June 13, 1977 pursuant to R. 2:2-3(a)(2),[1] appellants seek to review certain administrative action taken by the Commissioner of Education (Commissioner) and the State Board of Education (State Board) at the State Board's April 6, 1977 meeting. The action involves procedures for achieving a "thorough and efficient system" of public education (T and E) mandated by N.J. Const. (1947), Art. VIII, § IV, ¶ 1, as implemented by the Legislature in the Public School Education Act of 1975, L. 1975, c. 212, N.J.S.A. 18A:7A-1 et seq. (the 1975 Education Act or 1975 act), as amended by L. 1976, c. 97 (referred to as the Basic Skills Act), and as interpreted by our Supreme Court in a series of opinions and orders in the Robinson v. Cahill saga[2]
*541 At the State Board's April 6, 1977 meeting, the Commissioner reported that he did not intend to classify schools and school districts for the school year 1976-77 as "approved, conditionally approved or unapproved," as defined in the State Board's regulations. N.J.A.C. 6:8-1.1; N.J.A.C. 6:8-6.2. In explaining his decision the Commissioner stated that incomplete data would be available to him in the start-up year because of an unavoidable time lag in translating the statutes and regulations into working procedures for local school districts. In addition, the Commissioner noted that amendments to the 1975 act made by the Basic Skills Act of 1976 added to his administrative burden. At the same meeting the State Board concurred in the Commissioner's decision, subject to his reporting, in September 1977, on the progress local school districts were making in submitting educational plans (see the definition of "educational plan" in N.J.A.C. 6:8-1.1, and see N.J.A.C. 6:8-3.1 as to the development and implementation of such a plan). Appellants contend that the Commissioner's decision and the State Board's ratification violate obligations imposed upon respondents by the 1975 act and by the State Board's own regulations.[3]
*542 The genesis of this dispute is the constitutional imperative of the Education Clause which requires the State government, through the Legislature, to provide a thorough and efficient system of free schooling for all children in the state. As stated by Chief Justice Weintraub in Robinson I:
* * * But we do not doubt that an equal educational opportunity for children was precisely in mind. The mandate that there be maintained and supported "a thorough and efficient system of free public schools for the instruction of all the children in the State between the ages of five and eighteen years" can have no other import. Whether the State acts directly or imposes the role upon local government, the end product must be what the Constitution commands. A system of instruction in any district of the State which is not thorough and efficient falls short of the constitutional command. Whatever the reason for the violation, the obligation is the State's to rectify it. If local government fails, the State government must compel it to act, and if the local government cannot carry the burden, the State must itself meet its continuing obligation. [62 N.J. at 513]
*543 The court continued on the theme of the State's responsibility to define the educational opportunity which must be afforded to all public school pupils:
Indeed the State has never spelled out the content of the educational opportunity the Constitution requires. Without some such prescription, it is even more difficult to understand how the tax burden can be left to local initiative with any hope that statewide equality of educational opportunity will emerge. * * *

* * * * * * * *
We repeat that if the State chooses to assign its obligation under the 1875 amendment to local government, the State must do so by a plan which will fulfill the State's continuing obligation. To that end the State must define in some discernible way the educational obligation and must compel the local school district to raise the money necessary to provide that opportunity. [62 N.J. at 516, 519]
It is readily seen that the 1975 Education Act was designed to comply with the constitutional demand. The act combined a new formula for equalizing the financial capacity of local districts with a comprehensive plan for defining educational goals and evaluating the performance of the educational system. N.J.S.A. 18A:7A-4 establishes in broad terms the goal of a thorough and efficient school system, as follows:
* * * to provide to all children in New Jersey, regardless of socio-economic status or geographic location, the educational opportunity which will prepare them to function politically, economically and socially in a democratic society.
N.J.S.A. 18A:7A-5 adopts certain principles as "major elements" of such a system and as guidelines for achieving the legislative goal. These include the establishment of "educational goals at both the State and local levels" and evaluating and monitoring performance at State and local levels. N.J.S.A. 18A:7A-6 requires the State Board in turn to establish "goals and standards" for "all public schools in the State," "standards" being defined by N.J.S.A. 18A:7A-3 as "the process and stated levels of proficiency" *544 for measuring compliance with goals and objectives. These must be reviewed and updated at least every five years. N.J.S.A. 18A:7A-8. As amended by the Basic Skills Act, N.J.S.A. 18A:7A-6 also requires the State Board to fix "uniform Statewide standards of pupil proficiency in basic communications and computational skills" (basic skills). Local boards of education must also establish educational goals, N.J.S.A. 18A:7A-7, under rules prescribed by the State Board. N.J.S.A. 18A:7A-6.
The method chosen by the Legislature for holding state and local agencies accountable for their performance involves a system of evaluation, enforcement and reporting. This appeal focuses upon that system.
Each year each district must "evaluate pupil proficiency" in basic skills by "annual testing" and other appropriate means "to determine pupil status and needs." N.J.S.A. 18A:7A-7, as amended. Where proficiency in basic skills is below the "Statewide standard," interim goals shall be established by the local board so that each pupil will make reasonable progress toward achieving "at least the Statewide standard of proficiency," Id. Suggested measures for improvement are contained in N.J.S.A. 18A:7A-7, as amended. As part of its annual educational plan, each district must develop a "basic skills improvement plan for progress toward" interim goals. Id.
N.J.S.A. 18A:7A-10 provides for evaluation by the Commissioner in these terms:
For the purpose of evaluating the thoroughness and efficiency of all the public schools of the State, the commissioner, with the approval of the State board and after review by the Joint Committee on the Public Schools, shall develop and administer a uniform, Statewide system for evaluating the performance of each school. Such a system shall be based in part on annual testing for achievement in basic skill areas, and in part on such other means as the commissioner deems proper in order to (a) determine pupil status and needs, (b) ensure pupil progress, and (c) assess the degree to which the educational objectives have been achieved.
*545 N.J.S.A. 18A:7A-9 provides for a "comprehensive needs assessment program of all pupils in the State" at least once every five years under the direction of the Commissioner.
Self-evaluation by each school district is required each year not only as to pupil proficiency in basic skills as noted above, but in terms of the district's overall progress "in conforming to the goals, objectives and standards developed pursuant to" the act. N.J.S.A. 18A:7A-11. Each school district is required to make an annual report containing these evaluations as well as recommendations for improvement during the ensuing year. In turn, the reports are to serve as a basis for the Commissioner's annual report to the Governor and the Legislature on the condition of education in the State, the efforts under way to meet T and E standards, and the steps being taken to correct deficiencies. In addition to the district's and the Commissioner's annual reports, the State Board is required by N.J.S.A. 18A:7A-12 to make a comprehesive report on July 1, 1979, and the Commissioner is required to report by September 22, 1980 on the effectiveness of the Basic Skills Act in improving pupils' proficiency in basic skills. N.J.S.A. 18A:7A-11.
The 1975 Education Act also establishes a mechanism for compelling remedial action when a school "has failed to show sufficient progress toward the [applicable] goals, guidelines, objectives and standards," and toward interim goals for achieving basic skills. N.J.S.A. 18A:7A-14. The Commissioner and the State Board are authorized to make changes in the budgets of local districts, N.J.S.A. 18A:7A-15, enforceable in court, N.J.S.A. 18A:7A-16, to provide needed programs.
Although N.J.S.A. 18A:7A-10 literally does not call for an annual evaluation of all schools by the Commissioner, N.J.S.A. 18A:7A-14 requires the Commissioner to review the annual reports of each district, and, as noted above, to report annually to the Governor and the Legislature. N.J.S.A. 18A:7A-11. N.J.S.A. 18A:7A-11 does not specify that the Commissioner's annual reports to the *546 Governor and Legislature must deal with each district in detail. The contrary is suggested by comparison with N.J.S.A. 18A:7A-12. That section requires the State Board to make a district by district analysis in its four-year report due on July 1, 1979. The State Board's report must be made public, identifying those schools which fail to meet prescribed goals and standards. Id.
We are satisfied, however, that the overall statutory scheme calls for annual review by the Commissioner of each district, based upon his own evaluations and the districts' own annual evaluations and reports. N.J.S.A. 18A:7A-14 expressly calls for the review of such evaluations and reports as are made pursuant to §§ 10 and 11 of the act, N.J.S.A. 18A:7A-10 and 11. This is not to suggest that the Commissioner's staff cannot and need not monitor each school on a more frequent basis. But an evaluation of each school must also be made annually following the receipt of the districts' reports on July 1 of each year.
Our analysis of the statutory requirements was compelled by appellants' contention that
I. RESPONDENTS COMMISSIONER OF EDUCATION AND THE STATE BOARD OF EDUCATION HAVE REFUSED THIS YEAR [IN 1977] TO CARRY OUT THE LEGALLY MANDATED ANNUAL EVALUATION OF ALL PUBLIC SCHOOLS AND SCHOOL DISTRICTS AND ENFORCEMENT PROCEDURES IN VIOLATION OF [N.J.S.A. 18A: 7A-10 to 16], N.J.A.C. 6:8-6 AND 6:8-7, AND THE EDUCATION CLAUSE OF THE STATE CONSTITUTION AS CONSTRUED BY THE SUPREME COURT.
This contention misstates the issue as we see it. The action taken at the April 6, 1977 meeting dealt with a different step in the pursuit of T and E, the classification of districts as "approved, conditionally approved and unapproved." The concept of classifying, or designing, districts in these terms is not found in the 1975 Education Act, nor is it in the 1976 Basic Skills Act. It is a concept and requirement of the State Board's regulations implementing the statutory scheme. *547 It is the suspension of that classification process which poses the limited issue on this appeal. The Commissioner and State Board did not say that ongoing and annual evaluations of districts and schools were to be suspended. The action proposed and approved at the April 6 meeting was directed specifically to the classification of districts and schools, not to the evaluation of schools and districts.
N.J.A.C. 6:8-6.2 provides:

6:8-6.2 Classification and notification
(a) The Commissioner shall classify districts and each school within a district as approved, conditionally approved or unapproved, as defined in this Chapter, based upon analysis of the annual reports submitted, the results of annual monitoring, and visitations by representatives of the Commissioner.
(b) Classification of district or school shall become effective on the date of final action by the State Board of Education.
(c) The Commissioner shall annually notify the chief school administrator and district board of education in writing of district and school classifications.
(d) The classification of every school and district shall be reported to the public by the district board of education, and a classification list shall be maintained in the office of county superintendent.
Consistent with N.J.S.A. 18A:17A-14 to 16, N.J.A.C. 6:8-7.1, 7.2 and 7.3 provide the means to compel efforts toward improvement in conditionally approved and unapproved districts. N.J.A.C. 6:8-6.1(a) requires the Commissioner to make a "uniform, Statewide" annual evaluation of "each district and each school" to ensure "performance according to the standards and procedures prescribed by law and regulation * * *." Thus, the State Board by regulation authorized in N.J.S.A. 18A:7A-6 has cured any ambiguity found in N.J.S.A. 18A:7A-10. The regulations call for annual evaluation as well as classification of each district and school.
Therefore, the issue is whether the State Board could lawfully excuse the Commissioner from classifying every school and district after the close of the 1976-77 school year. Appellants contend that the Board is bound by its own *548 regulations and can rescind or suspend the regulation in question only by adopting amendatory provisions by a procedure that complies with the Administrative Procedure Act, N.J.S.A. 52:14B-1 et seq., especially N.J.S.A. 52:14B-4. See Glaser v. Downes, 126 N.J. Super. 10, 18-19 (App. Div. 1973), certif. den. 64 N.J. 513 (1974). N.J.S.A. 52:14B-4(a) calls for notice and an opportunity for interested persons to be heard before a rule or amendment to a rule can be adopted.
Respondents contend, as did the Commissioner when he asked for approval of his intended action, that N.J.A.C. 6:8-6.2 does not specify when the first annual report should be made. Respondents describe the numerous activities of the Commissioner and the State Board in implementing T and E objectives during the first year. General procedures accompanied by packages of forms and instructions to local administrators had to be devised and distributed. Additional standards to implement the 1976 Basic Skills Act had to be formulated and adopted. That act, L. 1976, c. 97, was approved on September 22, 1976, almost three months into the 1976-77 school year. Section 2 of the 1976 act amended N.J.S.A. 18A:7A-6 to require the State Board to establish "[u]niform Statewide standards of pupil proficiency" in basic skills. Regulations accomplishing this legislative mandate were not finally adopted until June 1, 1977, 9 N.J.R. 309-311 (July 7, 1977), although they were proposed early in 1977. 9 N.J.R. 12 (Jan. 6, 1977). In further support of the Commissioner's decision, respondents refer to the general uncertainty about state school aid which created budgeting problems in 1976-77. See L. 1976, c. 113. We are reminded also of the Supreme Court's struggle to compel compliance with the Education Clause, as interpreted in Robinson I, supra. Although the 1975 Education Act was declared facially valid if fully funded, Robinson V, supra, 69 N.J. at 467, it was not until July 8, 1976 when that funding was made possible by the New Jersey Gross Income Tax, L. 1976, c. 47. This was only eight days into the *549 start-up year, but it was not until late August of 1976 that the Commissioner notified all district superintendents and administrative principals of the initial objectives in the T and E campaign.
With this background, respondents say it was reasonable for the Commissioner to conclude that classification of districts as approved, conditionally approved or unapproved on the basis of less than a full year of operation under the new laws and regulations would not have been "equitable and well founded." Respondents contend that the State Board did not amend its regulation; that it merely supplied interpretation made necessary by the absence of a specific starting date for the first annual evaluation. In support of this contention respondents cite Merry Heart Nursing and Convalescent Home v. Dougherty, 131 N.J. Super. 412 (App. Div. 1974).
Reason supports the concerns of both sides of this dispute. Respondents fear the stigmatizing effects of a premature classification of a school as unapproved or conditionally approved. But appellants voice a legitimate concern for strict accountability. It is important that increased funding available in the early stages of fiscal reform be applied to remedy deficiencies. Appellants fear that delay in citing these deficiencies will delay their cure and will deprive pupils presently in the system of needed educational reforms.
The issue as we see it does not demand our resolution of these competing interests. It is not necessary that we judge the wisdom of the course chosen by the Commissioner and the State Board. They are bound by duly promulgated rules and regulations. The legal issue is simply whether the State Board improperly suspended its regulation without formal amendment, see Glaser v. Downes, supra, or whether it merely interpreted and applied the existing regulation in the light of prevailing circumstances.
N.J.S.A. 52:14B-2(e) defines an administrative rule as "each agency statement of general applicability and continuing effect that implements or interprets law or policy * * *. *550 The term includes the amendment or repeal of any rule, but does not include: * * * (2) intra-agency and inter-agency statements * * *." The regulation in question, N.J.A.C. 6:8-6.2, quoted above, calls for classification by the Commissioner of all "districts and each school within a district," and, implicitly, for review of such classifications by the State Board. Each classification becomes "effective on the date of final action by the State Board of Education." Written notice of the classification is to be given to each district board and chief school administrator, and public notice of the classifications is to be given by the district boards.
Although the action taken at the April 6, 1977 meeting was limited to one year, it was general in that it affected all schools and districts. The regulation requires classifications to be based in part on annual reports submitted by each district board pursuant to N.J.A.C. 6:8-6.1(b). It also requires that notice be given to district boards and others "annually." N.J.A.C. 6:8-6.2(a) and (c). By implication the classification is the by-product of the annual evaluation performed by the Commissioner pursuant to N.J.A.C. 6:8-6.1.
Thus, by clear implication, N.J.A.C. 6:8-6.2 calls for classification of all districts after the close of the first school year as well as each year thereafter. Thus, excluding the first yearly classification after the T and E regulations went into effect must be viewed as an amendment to N.J.A.C. 6:8-6.2. The April 6, 1977 action had the effect of reading an exception into the provision for annual classification. Consistent with the purposes of the Administrative Procedure Act, notice and an opportunity to be heard should have been given of an amendment or an exception of such broad application and public interest. While good reason supports the action taken, it cannot be said that applying the regulation to the 1976-77 year would have been absurd and of no value. Not classifying districts had the disadvantage of suspending the remedial procedures called for *551 in N.J.A.C. 6:8-7.1 to 7.3 which are tied into the classification process under the administrative scheme, although N.J.S.A. 18A:7A-14 would still apply. N.J.A.C. 6:8-7.1(a) authorizes the Commissioner to direct a local district to prepare a remedial plan when the district has been classified as "conditionally approved or unapproved." Implementation of the remedial scheme is the means by which the State compels a district to improve its educational system.
Although it is too late to meaningfully change the Commissioner's action for the 1976-77 school year, the issues raised are too significant to declare the appeal moot. See John F. Kennedy Memorial Hospital v. Heston, 58 N.J. 576, 579 (1971). However, we see no purpose in now ordering the Commissioner to classify districts and schools as of July 1, 1977 on the basis of the data then on hand. Another year has passed and new reports were due on July 1, 1978. At the April 6 meeting the Commissioner stated that he intended to classify districts after the close of the 1977-78 school year. This he is obliged to do under the present regulations unless they are properly amended to change that requirement. In any event, nothing we have said excuses the Commissioner from the obligation annually to evaluate the performance of each district and school based upon the districts' annual reports, N.J.A.C. 6:8-6.1(b), and monitoring by the Commissioner's designees. N.J.A.C. 6:8-6.1(e).
There is an additional contention advanced by appellants that we must consider. Appellants assert that the Commissioner has not asked for certain data to be submitted by local districts; as required by N.J.S.A. 18A:7A-11 and N.J.A.C. 6:8-6.1(c). Respondents reply that all such data need not be contained in the districts' annual reports if the data is submitted in other form. N.J.A.C. 6:8-6.1(d) provides that the annual report shall not require the resubmission of the information in any other reports or forms. The record indicates that much of the data required by *552 statute and regulation will be obtained in one form or other. It may be useful to have it collected in one place. Nevertheless, this issue is not within the scope of the appeal. It was not identified as an issue in the notice of appeal and is not properly before us. Therefore we will not pass on the reasonableness of the portion of N.J.A.C. 6:8-6.1(d) implicated in this issue.
For the reasons previously stated, we conclude that N.J.A.C. 6:8-6.2 could not have been changed or suspended by resolution of the State Board without complying with the rule making procedures of N.J.S.A. 52:14B-4(a). Nevertheless, we decline to exercise our discretionary power to order compliance with the regulations as applied to the 1976-77 school year. More current data based upon the intervening school year should now be available to allow accurate classification of schools and districts.
We reverse the action of the Commissioner and the State Board of Education but decline to grant affirmative relief.
NOTES
[1] The notice of appeal is also denominated a "Complaint in lieu of prerogative writ." It contains material not authorized by R. 2:5-1(f). Review of action taken or rules promulgated by state administrative agencies and officers is authorized by R. 2:2-3(a)(2). Cf. R. 4:69-1. Appellants' motions for ad interim relief, acceleration of the appeal and designation of the appeal as a class action were denied. Their motions for leave to appeal the denial of ad interim relief and acceleration were denied and dismissed as moot, respectively, by the Supreme Court.
[2] 62 N.J. 473 (1973) (Robinson I), cert. den. sub nom. Dickey v. Robinson, 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed. 2d 219 (1973); 63 N.J. 196 (1973) (Robinson II), cert. den. sub nom. Dickey v. Robinson, 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed.2d 219 (1973); 67 N.J. 35 (1975) (Robinson III); 67 N.J. 333, corrected opinion printed at 69 N.J. 133 (1975) (Robinson IV), cert. den. sub nom. Klein v. Robinson, 423 U.S. 913, 96 S.Ct. 217, 46 L.Ed.2d 141 (1975); 69 N.J. 449 (1976) (Robinson V); 70 N.J. 155 (1976) (enjoining the expenditure of funds for public schools), amended 70 N.J. 464 (1976); 70 N.J. 465 (1976) (vacating injunction).
[3] Shortly before the oral argument date in this appeal, appellants moved for leave to file a supplemental brief and to enlarge the record to include amendments to the T and E regulations proposed by the State Board at its January 11, 1978 meeting. 10 N.J.R. 57 (Feb. 9, 1978). The proposed amendments would continue the classification of schools and districts, with the term "conditionally approved" changed to "approved with conditions." As amended, N.J.A.C. 6:8-6.2(b) would require the classification process to conform to a timetable approved by the State Board. Appellants' complaints are directed to the proposed "Timetable For Classification of Districts and Schools" which would delay the classification of schools until "after the annual report on July 1, 1980 * * *." 10 N.J.R. 58 (Feb. 9, 1978). Appellants also seek to enlarge the issues to include their contention that the proposed regulations would dilute as well as postpone the Commissioner's evaluations of T and E progress made by local districts and would largely substitute local standards and goals for statutorily required State standards and goals.

We denied appellants' motion to postpone oral argument and reserved decision on their motion for leave to enlarge the record and to file a supplemental brief. We now grant the motion to enlarge the record but deny the motion to file a supplemental brief. We do not intend to alter the notice of appeal or change the issues on this appeal. The proposed administrative amendatory action is not appealable as of right since it is not final action. R. 2:2-3(a)(2); R. 2:2-4. To this date we have seen no notice of the adoption of the proposed amendments. While the contemplated agency action may be relevant to the matter under review, we see no reason at this time to go beyond the issues raised on this appeal, especially when the attack on the proposed regulations preceded their adoption.