GAIL DOUGHERTY, ON BEHALF OF MICHAEL DOUGHERTY, HER SON, RESPONDENT, v. DEPARTMENT OF HUMAN SERVICES, DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES AND MIDDLESEX COUNTY LOCAL MEDICAL ASSISTANCE UNIT, APPELLANTS.

Argued February 23, 1982—Decided July 8, 1982.

1

*Barbara A. Harned*, Deputy Attorney General, argued the cause for appellants (*Irwin I. Kimmelman*, Attorney General of New Jersey, attorney; *Erminie L. Conley*, former Assistant Attorney General, of counsel).

*Steven P. Weissman* argued the cause for respondent (*James Sacher*, Director, Middlesex County Legal Services Corp., attorney).

The opinion of the Court was delivered by

O'HERN, J.

This case concerns judicial waiver of an agency regulation denying Medicaid reimbursement for certain classes of medical services. Specifically, we must decide the validity, as applied to the facts of this case, of a state regulation that prohibits payment for an air cleaner medically needed to stabilize the asthmatic condition of a young patient.

I.

Michael Dougherty is a nine-year-old boy who is eligible for Aid to Families with Dependent Children (AFDC) medical assistance and therefore eligible for Medicaid benefits. He suffers from asthma and allergic rhinitis. Treatment with medication and injections was attempted without success. He was twice hospitalized for several days of care. Twice monthly he required emergency room treatment. In the fall of 1979, after four trips to the emergency room in eight weeks, Michael's allergist prescribed that an "HEPA Cleaner" be installed in Michael's room. This air cleaner removes very small particles of household dust, molds and pollens from the air. Michael's

mother bought the equipment in October 1979 and applied for reimbursement of the purchase price of $269. The Middlesex County local unit of the Division of Medical Assistance and Health Services of the State Department of Human Services denied reimbursement because according to *N.J.A.C.* 10:59–1.6, the air cleaner was included in a class of environmental control equipment whose primary and customary use is non-medical. The Doughertys requested a fair hearing in accordance with *N.J.A.C.* 10:49–5.3. At the hearing in February 1980 the evidence showed that Michael's condition had improved since he had been using the air cleaner and that he had had no further hospitalization or emergency room treatment. The Administrative Law Judge reversed the local agency, found the item to be medically necessary and not environmental equipment as defined by the regulation, and recommended reimbursement. On appeal to the Department of Human Services, the Commissioner's designee reversed on the basis that the equipment purchased was an electrostatic air filter, an item for which payment was specifically prohibited by the regulation. The Appellate Division reversed, holding that under the unique circumstances of this case the regulation should be waived to achieve the broader purposes of the New Jersey Medical Assistance and Health Services Act, *N.J.S.A.* 30:4D–1 *et seq.* We granted the Department's petition for certification, 88 *N.J.* 495 (1981).

## II.

Title XIX of the Social Security Act established the Medicaid program under which participating states may provide federally funded medical assistance to certain eligible needy persons. 42 *U.S.C.* § 1396. We have described the program as follows:

Medicaid is a program whose principal aim is that of "enabling each State, as far as practicable under the conditions in such State, to furnish * * * medical assistance [to] individuals whose income and resources are insufficient to meet the costs of necessary medical services * * *." 42 *U.S.C.* § 1396. In order to achieve this goal, a complex cost-sharing mechanism has been constructed

providing for partial federal funding of medical services rendered to the indigent.

> The Medicaid Act represents an exercise in what has been termed "cooperative federalism." Note, "State Restrictions on Medicaid Coverage of Medically Necessary Services," 78 *Colum. L. Rev.* 1491, 1491 (1978). The program is primarily administered by the State, subject to federal guidelines and constraints. Each participating State is required to adopt a plan, which must be approved by the Secretary of the Department of Health, Education & Welfare (HEW), covering in detail the services to be rendered. 42 *U.S.C.* §§ 1396, 1396a(a). The plan must provide for five general categories of medical assistance and may include others. 42 *U.S.C.* § 1396a(a)(13)(B). [*Monmouth Medical Center v. State*, 80 *N.J.* 299, 302–03 (1979)].

The New Jersey Medical Assistance and Health Services Act, *N.J.S.A.* 30:4D–1 *et seq.*, was enacted to enable the State to obtain the benefits provided by the federal law. The Division of Medical Assistance and Health Services in the Department of Human Services has been charged with implementing and administering a program of medical assistance and directed to do whatever is "necessary to secure for the State of New Jersey the maximum Federal participation that is available with respect to a program of medical assistance, consistent with fiscal responsibility and within the limits of funds available for any fiscal year...." *N.J.S.A.* 30:4D–7. New Jersey may typically receive a reimbursement from the federal government of 50 percent of the program costs. The Division is authorized to promulgate rules and regulations to carry out that intent, *N.J. S.A.* 30:4D–7, as well as to provide the Secretary of HEW with the State's plan, *N.J.S.A.* 30:4D–7(a). *Monmouth Medical Center, supra*, 80 *N.J.* at 316.

Although Title XIX does not require states to provide funding for all medical treatment falling within the five general categories, it does require that "State medical plans establish 'reasonable standards... for determining... the extent of medical assistance under the plan which... are consistent with objectives of [Title XIX],' 42 *U.S.C.*, § 1396a(a)(17)..." *Beal v. Doe*, 432 *U.S.* 438, 441, 97 *S.Ct.* 2366, 2369, 53 *L.Ed.*2d 464, 470 (1977). We have never held that our statutory program requires state

reimbursement for all medically necessary services for every patient. *Monmouth Medical Center, supra,* 80 *N.J.* at 309.[1]

There are two questions, then, in this case. Is the agency regulation valid, and was it correctly applied as to this claimant, *i.e.,* was the order of waiver proper?

## III.

### A.

▪ In *Texter v. Dept. of Human Services,* 88 *N.J.* 376 (1982), we recently restated the principles governing review of agency regulations. We held there that "[a]dministrative agencies have wide discretion in selecting the means to fulfill the duties that the Legislature delegated to them." *Id.* at 383. *N.J.S.A.* 30:4D–5 and 4D–7 authorize the agency and the Commissioner to adopt rules and regulations to implement the policies of the act. On review, courts presume that an administrative regulation is valid. The burden is on the challenger to demonstrate that the regulation is arbitrary, capricious or unreasonable. *New Jersey Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 562–63 (1978); *Cole Nat'l Corp. v. State Board of Examiners,* 57 *N.J.* 227, 231 (1970). A court will not substitute its judgment for the expertise of the agency. *New Jersey Guild, supra,* 75 *N.J.* at 562.

---

[1] In *Monmouth Medical Center, supra,* 80 *N.J.* at 309, this Court expressly declined "to join the fray" of split opinion as to whether a State must fund all necessary medical services for which federal matching funds are available. The original Act required participating states to move toward, and eventually to furnish, "comprehensive care and services to substantially all individuals who meet the plan's eligibility standards with respect to income and resources," Social Security Amendments of 1965, Title XIX, § 1903(e), 79 *Stat.* 350. In response to the rapidly inflating cost of medical services, this section was repealed in 1972, Social Security Amendments of 1972, Title II, § 230, 86 *Stat.* 1410. The legislative history demonstrates concern for the substantial burden placed on limited state resources by the rapid increases in the cost of Medicaid. See also *Virginia Hospital Ass'n v. Kenley,* 427 *F.Supp.* 781 (D.C.E.D.Va.1977).

■ In fulfilling its statutory mandate, the Division has adopted a comprehensive manual for the administration of the program, *N.J.A.C.* 10:49–1.1 *et seq.* Its several hundred pages give detailed descriptions of eligible items such as orthotic appliances, *N.J.A.C.* 10:55–1.1 *et seq.*, coverage for physical therapy, *N.J.A.C.* 10:53–1.6, and payment allowed for prescription drugs. *N.J.A.C.* 10:51–6.18. In the subchapter entitled "Medical Supplier Manual," the agency specified certain non-covered items including personal incidentals, gauze, bandages, and orthopedic mattresses. *N.J.A.C.* 10:59–1.6. In subsection (a)(6) the following items were excluded from coverage:

> Environmental control equipment and supplies (for example, air conditioners, humidifiers, dehumidifiers, electrostatic filters and so forth: 1. exceptions are vaporizers and cool mist humidifiers.)

The record does not disclose the reason for each such exclusion. The agency argues that environmental equipment was excluded from coverage because it not only serves the medical needs of the patient but also aids the comfort and convenience of all of the members of the household. No one would deny that surgical gauze is necessary for medical treatment of a wound or that other appliances may be necessary for medical treatment, but an agency administering so vast and complex a program can well determine that such choices must be made and that certain items deserve different treatment. Judicial supervision of such classifications would be unwise.[2] Establishment of priorities is best left to the legislative branch and executive agencies. Since the standards adopted were reasonable and consistent with the objectives of the Medicaid Act, the Appellate Division found the regulation to be valid. We agree.

---

[2]We do not deal here with the exclusion of a specific medical condition. The Code of Federal Regulations provides, for example, that a State

> may not arbitrarily deny or reduce the amount, duration, or scope of a required service under § 440.220 to an otherwise eligible recipient solely because of the diagnosis, type of illness or condition. [42 *C.F.R.* § 440.230(c)(1)].

## B.

■ A more difficult question is whether the regulation should be ordered waived in the circumstances of this case. Prior to the installation of the air cleaner the young boy had been hospitalized twice at a cost of approximately $1,000 per hospitalization, and had been to the emergency room twice a month at an average cost of $40 per visit, exclusive of the cost of drugs. All of these fees were paid with public funds. The price of the air cleaner was $269 and it seems to have eliminated the problem. In addition to the public economic benefit, the boy has been spared the continuing suffering of illness and the trauma of hospitalization.

To achieve what it called a sensible and humane result, the Appellate Division ordered the regulation waived. It is an appealing solution, satisfies our sense of personal justice and settles the matter, but it may not serve the public interest. In our view, the matter must be remanded to the agency to make the decision on waiver itself.

The manual of procedures for administration of the Medicaid program permits the administrative flexibility to deal with the practicalities of the situation highlighted by the circumstances of this case. *N.J.A.C.* 10:49–5.3(b)(4), in effect at the time of the Dougherty hearing, provides that the fair hearing shall include consideration of

... the reasonableness and equitableness [sic] of the policies promulgated under law if the claimant is aggrieved by their application to his situation.[3]

---

[3]Although applicable at the time of the hearing in February 1980, *N.J.A.C.* 10:49–5.3(b)(4)(ii), requiring agency consideration of the "reasonableness and equitableness" [sic] of the departmental policies, has since been repealed. 12 *N.J.R.* 561, 581 (1980); 13 *N.J.R.* 1, 17 (1981). The requirement that agency hearings and determinations be fair and reasonable is mandated by case law, *Texter, supra*, 88 *N.J.* at 382–83, and such hearings must include consideration of particular circumstances. *Worthington v. Fauver*, 88 *N.J.* 183, 204 (1982), citing *Bayshore Sewerage Co. v. Dept. Environ. Protection*, 122 *N.J. Super.* 184, 199 (Ch.Div.1973).

The inevitable adversarial clash of litigation focused attention at the agency level on whether the particular device was "environmental equipment." The administrative law judge found that it was not. The agency found that it was. The agency's deliberations did not resolve the necessary question of whether the rule is reasonable or equitable as applied to Michael Dougherty's situation.

Waiver would require focusing the administration of the program on an individual basis, a process perhaps well suited to disputes between individual litigants, but not necessarily productive of the general good. No great sense of justice is required to realize that the claimant in this case would be better off with the filter and that the cost would be minimal. The entire Court joins the dissent in this observation. But it is not fair to the administrators of the program to assume that they too are not fully aware of these matters. In our view the dissent does not fully take into account the fact that uniformly administrable rules may best enforce the policies underlying regulatory statutes. Even at the agency level, waiver would require a case-by-case determination of whether the facts of a particular situation merit waiver and, thus, might hamper efficient rule application. Much more troubling is the concept of judicial waiver.[4] Apply-

---

Shortly before oral argument, the claimant submitted an article on filtration devices as a supplement to the administrative record pursuant to R. 2:5–5. The article was submitted to counter the assumption made below that the HEPA air cleaner is an electrostatic air filter, and thus specifically excluded by the rule as an ineligible item. The item points out that the HEPA air cleaner is not an electrostatic air filtration system, but rather is a system developed by the Atomic Energy Commission during World War II and whose existence has remained almost completely unknown to the public. We have not considered the material. *See Pomanowski v. Monmouth County Bd. of Realtors*, 87 *N.J.* 426 (1981). The Commissioner will have the benefit of this new evidence on the remand.

[4]We need not debate the question of judicial power to order waiver. The requirement that rules make provision for exceptions has been described as "withering." Diver, "Policymaking Paradigms in Administrative Law," 95 *Harv.L.Rev.* 393, 419 (1981). The Supreme Court has confirmed that the

ing this concept of waiver to dictate the scope of coverage for assistance programs obviously displaces the agency's discretion and decision-making function.

Because the Legislature has delegated to the agencies the authority to adopt, revise and enforce implementing regulations, we believe it would be wrong for us as judges to substitute our judgments in individual cases for those of agency heads. The increasing social demands for limited public resources will strain our delivery systems to the utmost. Under current federal legislation, 95 *Stat.* 535, the funds for many social service programs have been rolled into block grants to the states. State agencies must make the hard choices about how to expend these funds. We hold no franchise to allocate these diminishing resources. The institution of the judiciary, having no power to raise revenues of its own or to exert the police power beyond the reach of its writ, can only make an arbitrary reshuffling of available revenues without consideration of those who will be taken out at the other end of the shuffle. We have no monopoly on justice. We share it with many, and not just the Legislature and the Executive. We share it also with administrators whose task is often a lot more difficult than ours.

As noted in *Texter, supra*, 88 *N.J.* at 389, "the economic costs of [such a] regulation are relevant . . . . " The agency may well conclude that although waiver may serve the individual needs of the patient, in the long run the overall statutory purposes of

---

validity of a rule does not depend on its inclusion of a waiver clause. *FCC v. WNCN Listeners Guild*, 450 *U.S.* 582, 601 n. 44, 101 *S.Ct.* 1266, 1278 n. 44, 67 *L.Ed.*2d 521, 538 n. 44 (1981); *Iuppo v. Burke*, 162 *N.J.Super.* 538 (App.Div. 1978) (State agency may not suspend regulation without formal amendment and compliance with the Administrative Procedure Act); *but see WAIT Radio v. FCC*, 418 *F.*2d 1153, 1157–60 (D.C.Cir.1969) (agency must give meaningful consideration to waiver applications); *In re Fair Hearing*, 138 *N.J.Super.* 417 (App.Div.1975) (six month limitation period ordered waived). Suffice it to say that the major purpose of regulatory reform, to bring higher levels of fairness and consistency in administrative adjudications, *Unemployed-Employed Council of N.J., Inc. v. Horn*, 85 *N.J.* 646, 650 (1981), will not be advanced by *ad hoc* judicial selection of benefit recipients.

equitably and reasonably serving the medically needy are better served by drawing certain fixed lines in administration of the program.

Moreover, in many cases there will be no increased cost to the public, since the applicant will obtain the needed equipment through his or her own funds. The other cost, not acknowledged by the dissent, however, is the expenditure of administrative energy, time and personnel in adjudicating what seems to be the rule of the dissent, namely, in every case where the regulation prohibits reimbursement, there is to be a trial to see whether or not the cost-benefit analysis of the particular item favors the claimant. Judges may be attuned to trials, but their proliferation is hardly a hallmark of sound administration. Exactly what the cost is in added personnel is something this Court does not know, but we may safely assume that the administrators do know. It may very well be that the cost of such case-by-case determinations will require an offsetting decrease in reimbursable medical services, thereby depriving not simply the claimant in this case of the filter, but many other citizens of medical services now allowed under the regulations. Obviously the administrators knew that an air cleaner can be used for medical purposes—otherwise the exception would never have been inserted in the regulation. They also knew that it was equally adaptable to non-medical uses. Presumably they may have concluded that given the overall cost of the Medicaid program, the costs of case-by-case determinations in this and other cases, and the likelihood that in the majority of cases the benefits were predominantly environmental rather than medical, it would be unwise to provide for reimbursement in any case. The reasoning may also have included the observation that in most cases there will be members of the family who benefit from the filter and who might therefore be regarded as probable contributors to its purchase. The decision is hardly irrational and our remand is not meant to suggest any suspicion that it is. It is simply to make sure that the agency, which apparently did

not consider its power to waive the regulation in a "fair hearing," will focus on that issue.

■ We therefore conclude that the Commissioner must make the determination as to whether, in the circumstances of this case, waiver of the regulation serves the purposes of the New Jersey Medical Assistance and Health Services Act. A just limit on public responsibility may further the legislative policy and serve to inform a society that may in the future have to face even more difficult decisions but which might otherwise be unprepared for the analysis and unable to accept it. Obviously, the agency's consideration of alternate forms of treatment that, although not strictly allowed, are medically necessary, remedy the patient's problem and simultaneously save tax dollars, would be. not only practical but also humane. But a basic tenet of judicial review is that courts are not free to substitute their judgment as to the wisdom of a particular administrative action for that of the agency so long as that action is statutorily authorized and not otherwise defective because arbitrary or unreasonable. *New Jersey Guild of Hearing Aid Dispensers v. Long*, 75 *N.J.* 544, 562–63 (1978).

We modify the Appellate Division judgment in part and remand to the Department of Human Services in accordance with this opinion.

PASHMAN, J. dissenting.

For the second time this year in a medical assistance case, this Court has needlessly remanded to an administrative agency a case that has only one reasonable disposition. *Texter v. Human Services Dept.*, 88 *N.J.* 376 (1982). The air purifier at issue here has saved young Michael Dougherty substantial suffering from his severe asthma. It has also saved the State and federal governments several thousand dollars in Medicaid reimbursements. No one disputes these facts. Yet the majority suggests that this Court does not have the authority, or ought not use its authority, to order the State to reimburse Ms. Dougherty for the

$269 she spent on her son's air purifier. I disagree. Our authority to reverse unreasonable agency action is clear under our prior cases and is supported by both federal and State regulations. I would order the State to reimburse Ms. Dougherty. I therefore dissent.

No one can question that denial of reimbursement under these circumstances would be unreasonable. Before his mother purchased an air purifier, Michael's asthma caused him great difficulty and pain. He was subject to acute attacks during which he wheezed, lost his breath and was unable to walk. His condition also necessitated an average of two emergency room visits each month, at a cost to the Medicaid program of $40 per visit. In the two years before the purchase, Michael was hospitalized twice, at a cost to Medicaid of roughly $1,000 each time.[1] The air purifier, in contrast, cost $269. The issue is thus whether Medicaid should fund an air purifier for the Dougherty home, preventing attacks at minimal expense, or whether Michael must await severe attacks in order to receive expensive hospital care. The purpose of *N.J.A.C.* 10:59–1.6(a)(6), on which the majority relies to deny reimbursement, is to prevent reimbursement for "comfort items" that are not real medical necessities. But there is no dispute here that an air purifier is a medical necessity for young Michael.

The majority all but agrees that a denial of reimbursement in this situation would be unreasonable. The majority recognizes that reimbursement in this instance "would be not only practical but also humane." *Ante* at 12. Yet the majority refuses to reverse the denial. I do not believe this Court is powerless to reverse this irrational application of Medicaid regulations.

*N.J.A.C.* 10:49–5.3(b)(4)(ii), in effect at the time of the Dougherty hearing, requires that Medicaid fair hearings consider whether application of the relevant regulations to the particular

---

[1] Ironically, Michael's hospital treatment consisted of placing him in a croup tent, which contained an air purifier.

facts of the petitioner's case would be inequitable or unreasonable.[2] The regulation states:

"4. The fair hearing *shall* include consideration of:

&ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;

ii. The department's interpretation of the law and the reasonableness and equitableness of the policies promulgated under law *if the claimant is aggrieved by their application to his situation.*" [Emphasis added]

Thus, the regulation mandates at least some case-by-case consideration of the application of regulations. The Department, of course, cannot ignore this rule. *See State v. Atlantic City Electric Co.*, 23 *N.J.* 259, 270 (1957); *Rutgers Council v. N.J. Bd. of Higher Education*, 126 *N.J.Super.* 53, 63 (App.Div.1973).

Similarly, federal regulation precludes unreasonable application of State Medicaid regulations. In *Monmouth Medical Center v. State*, 80 *N.J.* 299 (1979), this Court held that a regulation which is unreasonable "under the circumstances presented" is "in clear conflict with federal requirements and [therefore] invalid under the Supremacy Clause of the United States Constitution." *Id.* at 313.

The majority concedes that the Department is required by regulation to consider whether the application of its regulations to particular situations is reasonable. It is for this reason that the majority remands to the Department.

The issue therefore becomes whether this Court can have any role in reviewing the Department's determination pursuant to *N.J.A.C.* 10:49–5.3(b)(4). The majority suggests that if the Commissioner finds that the application of the Medicaid regulations to these facts is not unreasonable, his judgment will stand. Thus, the majority implies that the Commissioner's decision is unreviewable, despite a clear line of New Jersey cases concluding that unreasonable agency action is to be set aside. As this Court recently stated in *Worthington v. Fauver*, 88 *N.J.* 183, 204 (1982),

---

[2]*N.J.A.C.* 10:49–5.3(b)(4)(ii) has since been repealed. 12 *N.J.R.* 561, 581 (1980); 13 *N.J.R.* 1, 17 (1981).

[i]t is firmly settled that arbitrary and capricious action by an administrative or executive agency should be overturned. *Henry v. Rahway State Prison*, 81 *N.J.* 571, 580 (1980); *Mayflower Securities v. Bureau of Securities*, 64 *N.J.* 85, 93 (1973); *Campbell v. Civil Service Dept.*, 39 *N.J.* 556, 562 (1963).

There is no question that the Department's decision in this case on remand will be subject to judicial review for reasonableness.

The majority nonetheless adheres to the formality of remanding to the Department. In my view, a remand is totally unnecessary. A Department decision reaffirming its denial of reimbursement would be irrational. I cannot imagine a more open-and-shut case of unreasonable agency action than denying reimbursement in this case. Michael's air purifier not only improved his health, but saved the State money as well. A Department decision affirming its denial of reimbursement would have to be set aside.

Instead of remanding to the Department, only to again reverse the Department if it reaches that result, we should simply hold that reimbursement is mandated by law. In this regard, *Monmouth Medical Center* is precisely on point. In that case, we dealt with a regulation which unequivocally denied Medicaid reimbursement to hospitals for patients awaiting placement in a skilled nursing facility, thereby giving hospitals incentive to place patients in lesser care facilities. We found the regulation generally reasonable but held that it "paints with too broad a brush" and thus is unreasonable as applied to hospitals unable to arrange a placement through no fault of their own. 80 *N.J.* at 310. We held that the Department "must exercise discretion" to grant reimbursement in those circumstances. *Id.* at 311. Instead of remanding, we ordered reimbursement on the basis of the facts in that case. I would follow the same approach here.

According to the majority, only the agency is qualified or legally empowered to decide whether to apply its regulations rigidly or to waive them in appropriate instances. However, contrary to what the majority states, my position in no way seeks to increase the power of the judiciary at the expense of agencies. In fact, it is based on firmly established principles of administrative law.

The majority recognizes that the Department's own regulation mandates consideration of whether application of its rules to the particular facts of this case is reasonable and equitable. *N.J.A.C.* 10:49–5.3(b)(4). The Department is not free to ignore that regulation. That is why the majority has ordered a remand. The Department's decision on remand, like all other agency decisions, is subject to judicial review for reasonableness. On these basic principles of administrative law, we are in agreement.

The majority concludes that an agency decision denying reimbursement should be upheld on appeal. They argue that such a result would not be unreasonable because there are good reasons of economy and efficiency in the administration of statutes to enforce rigid rules of general application rather than using case-by-case determination. This argument fails to give any force to the regulation which requires the agency to make particularized determinations in certain cases. Although it may be reasonable in some cases for an agency to preclude any case-by-case determinations, this agency has not done so. It has adopted a regulation that places a binding duty on it to determine whether its rigid rules are applicable to certain specific cases.

Thus, the majority's discussion of the dangers of *ad hoc* determinations is inapposite. That issue has been decided by the Department. It has determined that requiring consideration of the equities of particular cases best serves to direct medical assistance to those who need it. I defer to that judgment. So apparently does the majority since it remands the case for a determination "of whether the rule is reasonable or equitable as applied to Michael Dougherty's situation." *Ante* at 9.

Nor am I persuaded by the majority's fear that setting aside regulations when their application would be unreasonable will necessitate *ad hoc* determinations in every case. Most applications of a regulation will be routine, clearly fitting within both the fact situation intended to be covered by the regulation and

the policy underlying it. These applications of the rules will rarely be challenged. Only in a minority of cases will there even be a question as to the application of the regulation.

The real issue is not the requirements of *N.J.A.C.* 10:49–5.-3(b)(4). Those are unambiguous. Nor is the issue the power of this Court to reverse unreasonable agency action. That is conceded. This leaves only the reasonableness of this particular denial of reimbursement and the necessity of a remand on these facts as possible points of dispute. On these facts, a failure by the Department to waive the rule pursuant to *N.J.A.C.* 10:49–5.-3(b)(4) would be arbitrary and unreasonable. In fact, I doubt that the majority really disputes the unreasonableness of denying reimbursement in this case. They concede that reimbursement "would be not only practical but also humane." *Ante* at 12. I could not have said it better. If ever it would be arbitrary and capricious not to waive a regulation, this is such a case.

Why then the remand? The situation admits of only one answer. The majority hopes the Department will reverse itself, thereby reaching the correct result without giving the appearance of an exercise of judicial power. But this solution requires further hearings by the Department, unnecessarily diverting monies better spent for medical assistance to the poor. Rather than follow the empty formality of remanding, only to reverse if the Department fails to waive the rule, we should simply order reimbursement as we did in *Monmouth Medical Center.* The majority opinion does not address our holding in that case.

The issue dividing my position from that of the majority is really minor. My dissent in no way seeks to extend judicial power beyond its well-established parameters. I ask only a common-sense application of the Department's own rules, *N.J. A.C.* 10:49–5.3(b)(4), and of our traditional supervision of agency action.

Reason suggests that the State should not spend more money to create more suffering. Yet the majority finds it necessary to

defer to the expertise of the Department of Human Services in this case. In my view, this is a poor case for deference to rigid rule application. Michael Dougherty's air purifier has improved his health dramatically and saved the government money in the process. There is no question that for Michael the air purifier was a medical necessity. There also should be no question of Medicaid reimbursement. Humanity and economy demand it. I am surprised that this Court does not.

*For modification and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—6.

*Dissenting*—Justice PASHMAN—1.