WOODLAND PRIVATE STUDY GROUP, MINNESOTA MINING AND MANUFACTURING COMPANY AND ROHN AND HAAS COMPANY, APPELLANTS, v. STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION AND ROBERT E. HUGHEY, COMMISSIONER OF ENVIRONMENTAL PROTECTION, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted March 18, 1986—Decided April 8, 1986.

Before Judges PRESSLER, DREIER and BILDER.

*Pitney, Hardin, Kipp & Szuch,* attorneys for plaintiffs (*William H. Hyatt, Jr., and William J. Friedman,* on the briefs).

*W. Cary Edwards,* Attorney General of New Jersey, attorney for respondents (*Michael R. Cole,* First Assistant Attorney General, *Deborah T. Poritz,* Deputy Attorney General, of counsel; *Mary C. Jacobson,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

DREIER, J.A.D.

On June 24, 1984, Robert E. Hughey, Commissioner of the Department of Environmental Protection (DEP) issued Administrative Order No. 69 (AO69), a "policy statement" entitled "Participation of Responsible Parties in the Development of Remedial Investigations and Feasibility Studies," reproduced in Appendix A, attached to this opinion. Plaintiffs, Minnesota Mining and Manufacturing Company and Rohn and Haas Company, known collectively as Woodland Private Study Group, have appealed from the issuance of AO69, contending that it is, in fact, a rule adopted without the formalities required by the Administrative Procedure Act, *N.J.S.A.* 52:14B–1 *et seq.*

The factual background of the underlying dispute between Woodland Private Study Group and the DEP is set forth in detail in Judge Brotman's opinion in *Woodland Private Study Group v. State of New Jersey,* 616 *F.Supp.* 794, 796–798 (D.N.J. 1985) and need not be repeated here. Plaintiffs have informed us, however, that they have appealed the summary judgment granted by Judge Brotman. That opinion assumed the validity of AO69, although the issue apparently was neither briefed nor argued. The issue before us is the validity of AO69 which insures DEP control of the formulation and supervision of a remedial investigation/feasibility study of a hazardous discharge controlled by the New Jersey Spill Act. Application of the Spill Act could potentially result in treble damages upon the entities responsible for the pollution, *N.J.S.A.* 58:10–23.-11f(a), as well as a superseding first lien to secure payment therefor upon statutorily designated property of the polluter. *N.J.S.A.* 58:10–23.11f(f).

Plaintiffs contend that by our earlier denial of the DEP's motion to dismiss this appeal, we have already determined that AO69 is a rule. The issue raised in that motion was the timeliness of the appeal, and plaintiffs assert that our denial necessarily determined the applicability of the one-year time limitation of *N.J.S.A.* 52:14B–4d to challenge compliance with

procedures necessary to adopt a rule. We disagree. Our denial might also have meant that there was a significant issue whether this statement was a rule subject to the one-year limitation, and that we merely wished to have a full development of the issue in a plenary appeal.

On the merits, we must now determine whether the Administrative Order is a rule. *N.J.S.A.* 52:14B–2(e) provides:

'Administrative rule' or 'rule,' when not otherwise modified, means each agency statement of general applicability and continuing effect that implements or interprets law or policy, or describes the organization, procedure or practice requirements of any agency. The term includes the amendment or repeal of any rule, but does not include: (1) statements concerning the internal management or discipline of any agency; (2) intraagency and interagency statements; and (3) agency decisions and findings in contested cases.

Six factors to be applied in interpreting this statute are noted in *Metromedia Inc. v. Director Div. of Taxation,* 97 *N.J.* 313, 331–332 (1984). The regulation is subject to the Act if it

... (1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. These relevant factors can, either singly or in combination, determine in a given case whether the essential agency action must be rendered through rule-making or adjudication.

All appear satisfied here, although the Supreme Court there noted that the various factors could be balanced even if some were applicable and others not. Despite the Commissioner's designation of the statement as an administrative order, we determine it to be a rule subject to the procedural requirements for adoption stated in the Administrative Procedure Act.

We also reject DEP's claim that the thrust of AO69 was adjudicatory. *Metromedia* makes it clear that the six-part test determines the import of the regulation, not its genesis within a

specific dispute, nor its initial application to a single case. *Cf. Shapiro v. Albanese,* 194 *N.J.Super.* 418 (1984) and *Iuppo v. Burke,* 162 *N.J.Super.* 538, *certif. den.* 79 *N.J.* 462 (1978), both decided before *Metromedia.* DEP further urges that the regulation is merely a statement of internal policy and is, therefore, without "independent operative effect," relying upon *Rutgers Council v. N.J. Bd. Higher Education,* 126 *N.J.Super.* 53, 64 (1973). We find, however, that A O69 states more than internal settlement guidelines. It establishes policy applicable to an industry.

Administrative Order 69 is invalidated.

## APPENDIX A.

## ADMINISTRATIVE ORDER NO. 69

WHEREAS, it is necessary to insure that a remedial investigation and feasibility study (RI/FS) of a site which is scheduled for a publicly funded RI/FS will be properly and reliably performed; and

WHEREAS, it is necessary to insure the maximum degree of public confidence in the results of an RI/FS;

NOW, THEREFORE, I, Robert E. Hughey, Commissioner of the Department of Environmental Protection, pursuant to the authority vested in me by N.J.S.A. 13:1D–1 *et seq.,* the Solid Waste Management Act, N.J.S.A. 13:1E–1 *et seq.,* the Water Pollution Control Act, N.J.S.A. 58:10A–1 *et seq.,* and the Spill Compensation and Control Act, N.J.S.A. 58:10–23.11 *et seq.,* do hereby adopt the attached policy statement' regarding "Participation of Responsible Parties in the Development of Remedial Investigations and Feasibility Studies" (Attachment A).

This Order shall take effect immediately.

/s/ Robert E. Hughey

Robert E. Hughey
Commissioner

Date: 6/29/84

## ATTACHMENT A

### Participation of Responsible Parties in the Development of Remedial Investigations and Feasibility Studies

In order to insure that a remedial investigation and feasibility study (RI/FS) of a site which is scheduled for a publicly funded RI/FS will be properly and reliably performed and to insure the maximum degree of public confidence in the results of the RI/FS, the Department of Environmental Protection (hereinafter "the Department") will conduct all such RI/FS work. Although the Department will not allow a responsible party to conduct the RI/FS, the Department will allow a responsible party to participate in the development of an RI/FS under certain conditions. This memorandum sets forth the policy and procedures governing participation of a responsible party in the development of an RI/FS.

If a responsible party wishes to participate in the development of an RI/FS for a site which is scheduled for public funding, the Department will allow such participation provided that the following conditions are met:

1. The responsible party must agree to the scope of work developed by the Department;

2. The responsible party must agree that the State will hire the contractor to perform the RI/FS;

3. The responsible party must agree to pay all the costs of the RI/FS in advance, including the Department's administrative costs;

4. The responsible party must agree to comply with all applicable community relations requirements; and

5. The agreement must be formalized in an Administrative or Judicial Consent Order.

If these conditions are met, the Department will allow the responsible party to participate in the development of the RI/FS by permitting the party to be represented on a committee which will solicit proposals to perform the RI/FS, select a contractor to perform the work, approve the contractor's work plan and oversee the development of the RI/FS. The committee will be composed of members selected by the Department

and the responsible party, and will be chaired by a representative of the Department. A majority of the committee's members must be representatives of the Department.

If the responsible party is not willing to abide by these requirements, then public funding for the RI/FS should proceed as scheduled.