**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4398-16T1

V.W.,

 Petitioner-Appellant,

v.

DIVISION OF MEDICAL ASSISTANCE
AND HEALTH SERVICES,

 Respondent-Respondent,

and

MONMOUTH COUNTY DIVISION OF
SOCIAL SERVICES,

 Respondent.

_____

 Submitted September 5, 2018 – Decided  September 24, 2018

 Before Judges Alvarez and Gooden Brown.

 On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

 Margaret M. Mahon, attorney for appellant.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Jacqueline R. D'Alessandro, Deputy Attorney General, on the brief).

PER CURIAM

V.W. appeals from the April 20, 2017 final agency decision of the Department of Human Services (DHS), Division of Medical Assistance and Health Services (DMAHS), adopting the Administrative Law Judge's (ALJ) initial decision. The ALJ affirmed the Monmouth County Division of Social Services' (MCDSS) denial of V.W.'s eligibility for Medicaid nursing-home benefits based on V.W.'s failure to provide requested verification of her eligibility in a timely manner, pursuant to N.J.A.C. 10:71-2.2(e). We affirm.

After V.W.'s application for Medicaid nursing-home benefits was denied "for failure to supply corroborating evidence necessary to determine eligibility," V.W.'s daughter, S.T., appealed the denial to DMAHS on behalf of her mother. The matter was transferred to the Office of Administrative Law for a hearing as a contested case, N.J.S.A. 52:14B-1 to -15, :14F-1 to -13, and at the hearing conducted on January 6, 2017, the ALJ made the following factual findings.

V.W. was admitted to a nursing home in November 2015. After her resources were depleted, S.T. applied for Medicaid Only nursing-home benefits on December 8, 2015. On January 15, 2016, a MCDSS worker sent an initial

verification letter requesting all evidence of resources, including the deed to the home owned by V.W., bank accounts, proof of household expenses, and other income and resource information. On March 31, 2016, MCDSS denied the application for failure to provide evidence to support eligibility as requested in letters dated February 22, and March 2, 2016, but allowed S.T. an additional thirty days to provide the requested verifications. On April 8, and May 19, 2016, additional verifications were provided in connection with the transfer of V.W.'s home by quit-claim deed to S.T. and her husband. Although there had been no care contract between V.W. and S.T., S.T. requested a caregiver exemption.[1] Bank statements for two accounts were also provided, but documentation explaining cash deposits was missing.

On May 27, 2016, a MCDSS worker sent a letter requesting additional information regarding mortgage payments as well as Social Security check deposits and cash deposits and, on June 17, 2016, granted S.T. an additional

---

[1] To be eligible for a "caregiver exemption," S.T. had to prove that while residing in V.W.'s home, she provided care for the two years immediately before V.W. became an institutionalized individual, which permitted V.W. to reside at home rather than in an institution. N.J.A.C. 10:71-4.10(d)(4). Under those circumstances, "an individual shall not be ineligible for an institutional level of care because of the transfer of his or her equity interest in a home which . . . served immediately prior to entry into institutional care . . . as the individual's principal place of residence and the title to the home was transferred to" the child-care-giver. N.J.A.C. 10:71-4.10(d).

thirty-day extension to produce the requested verifications. On July 15, 2016, S.T. provided additional information but did not explain or clarify deposits to V.W.'s account. On July 22, 2016, MCDSS again denied the application for failure to supply corroborating evidence necessary to determine eligibility but allowed S.T. an additional thirty days to submit the requested verifications or file a new application.

On August 23, 2016, additional verifications were submitted but the documents did not adequately explain the source of deposits into V.W.'s account. The documents provided, consisting of deposit slips and other records, showed withdrawals from S.T.'s and her husband's accounts that did not correspond with dates or amounts that were deposited into V.W.'s accounts. There was no explanation or summary provided that would allow MCDSS to determine the exact source of the funds and how they were being deposited into V.W.'s account without MCDSS undertaking its own time-consuming accounting analysis. On September 15, 2016, additional information was provided but the information did not shed any light on the source of the deposits.

On January 6, 2017, during the hearing, additional information in the form of a "spreadsheet" was provided that satisfied MCDSS. The documentation was organized and summarized in a manner that demonstrated that S.T. and her husband would write checks from her husband's business account, which were

then deposited into V.W's account, and used to pay the mortgage and other household expenses. The MCDSS worker who testified at the hearing explained that the information previously presented was "very confusing" because there were "ATM withdrawals[,] [w]riting checks to yourself three or four times a month and then holding onto it and then later depositing in the bank." According to the worker, "[w]e couldn't move past it because we thought there were other resources that might have been out there coming in." The worker continued that with the benefit of the spreadsheet, there was "enough to say all right maybe it is believable[.]" However, although the information provided at the hearing was deemed adequate to establish financial eligibility, MCDSS determined that the application could not be approved with a January 2016 retroactive eligibility date as it was V.W.'s failure to provide the verifications in a timely manner that caused the denial.

On January 27, 2017, the ALJ issued an initial decision affirming MCDSS' determination that V.W. was ineligible for Medicaid Only nursing-home benefits. The ALJ concluded that MCDSS "promptly process[ed]" V.W.'s application, and "responded in a timely manner each time the . . . information [provided] was . . . deemed [in]adequate to establish financial eligibility." According to the ALJ, "[i]t was [V.W.] who did not provide the required

5                                                                A-4398-16T1

verifications in a timely manner, despite being advised on several occasions of the information that was required by the agency."[2]

The ALJ elaborated:

> Moreover, it is not the responsibility of the MCDSS to organize and summarize raw data (in the form of deposit slips or checking-account registers) to determine the dates of deposits and the amount of expenses paid by [V.W.] and/or family members in order to determine eligibility. Such a process would place an unnecessary and extraordinary burden on workers. The decision of the MCDSS to deny [V.W.'s] application was based on [V.W.'s] failure to provide requested verification of her eligibility in a timely manner. The decision cannot be based on documents that the agency did not have when it made its decision.
>
> When the information was finally organized and presented to the agency's satisfaction in January 2017, it was far too late for the original application date to be used for payment of nursing-home expenses going back to January 2016. The application for Medicaid Only nursing-home benefits was properly denied on July 22, 2016, as necessary verifications to establish eligibility were not provided within thirty days thereafter.

On April 20, 2017, the Director of DMAHS adopted the ALJ's decision. The Director posited that "[t]he issue . . . was whether [V.W.] timely provided the necessary verifications for [MCDSS] to make an eligibility determination."

---

[2]  The ALJ noted that had S.T. retained counsel in the beginning of the application process, rather than later, the information deficiencies may have been corrected in a more timely fashion.

The Director noted that "[o]ver the course of seven letters and five months [MCDSS] requested documents and more information in conjunction with the application." The Director described the documents submitted in response to MCDSS' requests as "multiple photocopies of a handwritten check ledger that [did] not provide any explanation for the transactions." The Director elaborated:

> [MCDSS] pointed to three examples where the withdrawals offered as an explanation exceeded the cash that was eventually deposited in [V.W.'s] account. In the first example, the withdrawals occurred up to two weeks before the deposit to [V.W.'s] account. In the last example, the withdrawals occurred up to [twenty-four] days after the deposit to [V.W.'s] account. Absent an explanation of the daughter and son-in-law's financial transactions, the documents are meaningless.

The Director acknowledged that under N.J.A.C. 10:71-2.3(c), the time frame in which the County Welfare Agency (CWA) must determine eligibility "may be extended when 'documented exceptional circumstances arise' preventing the processing of the application within the prescribed time limits." However, the Director concluded that

> [t]here [was] simply nothing in the record to demonstrate that there were exceptional circumstances warranting, additional time, to provide the requested verifications. [MCDSS] communicated the problems with the documents and granted [V.W.] additional time to supply a comprehensive explanation [of] the financial transactions. It was not done by the deadlines or the extensions. . . . [V.W.] may always reapply.

This appeal followed.

On appeal, V.W. argues that DMAHS unreasonably and erroneously denied her Medicaid application, despite being provided full and complete corroborating records in a timely manner, in violation of express and implied legislative policies and without sufficient evidentiary support in the record. V.W. asserts that the ALJ and DMAHS misidentified the records that were actually provided, and erroneously concluded that V.W. did not provide the documents in a form that was comprehensible to the MCDSS caseworkers. V.W. further argues that the records required to resolve MCDSS' suspicion of a hidden source of funds could have been determined by MCDSS as mandated by the regulations, and the "spreadsheet" that was ultimately deemed adequate by MCDSS was neither required, requested nor supported by any law or regulation and thereby constitutes unauthorized rulemaking. We disagree.

"Appellate review of an agency's determination is limited in scope." K.K. v. Div. of Med. Assistance & Health Servs., 453 N.J. Super. 157, 160 (App. Div. 2018) (quoting Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009)). "In administrative law, the overarching informative principle guiding appellate review requires that courts defer to the specialized or technical expertise of the agency charged with administration of a regulatory system." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need,

194 N.J. 413, 422 (2008). We are thus bound to uphold the administrative agency decision "unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." Ibid. (citing In re Herrmann, 192 N.J. 19, 28 (2007)).

In fact, "[w]here [an] action of an administrative agency is challenged, 'a presumption of reasonableness attaches to the action . . . and the party who challenges the validity of that action has the burden of showing that it was arbitrary, unreasonable or capricious.'" Barone v. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 210 N.J. Super. 276, 285 (App. Div. 1986), aff'd, 107 N.J. 355 (1987) (quoting Boyle v. Riti, 175 N.J. Super 158, 166 (App. Div. 1980)). "Deference to an agency decision is particularly appropriate where interpretation of the Agency's own regulation is in issue." I.L. v. N.J. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 389 N.J. Super. 354, 364 (App. Div. 2006); see also Estate of F.K. v. Div. of Med. Assistance & Health Servs., 374 N.J. Super. 126, 138 (App. Div. 2005) (indicating that we give "considerable weight" to the interpretation and application of regulations by agency personnel within the specialized concern of the agency). "On the other hand, an appellate court is 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" R.S. v. Div. of Med.

Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting Mayflower Sec. Co. v. Bureau of Sec. in Div. of Consumer Affairs of Dep't of Law & Pub. Safety, 64 N.J. 85, 93 (1973)).

"Medicaid was created by Congress in 1965 to 'provide medical services to families and individuals who would otherwise not be able to afford necessary care.'" S. Jersey Family Med. Ctrs., Inc. v. City of Pleasantville, 351 N.J. Super. 262, 274 (App. Div. 2002) (quoting Barney v. Holzer Clinic Ltd., 110 F.3d 1207, 1210 (6th Cir. 1997)). The Federal Government shares the costs of medical assistance with States that elect to participate in the Medicaid program. Mistrick v. Div. of Med. Assistance & Health Servs., 154 N.J. 158, 165-66 (1998) (citing Atkins v. Rivera, 477 U.S. 154, 156-57 (1986)). New Jersey participates in the federal Medicaid program pursuant to the New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -19.5. Eligibility for Medicaid in New Jersey is governed by regulations adopted in accordance with the authority granted by N.J.S.A. 30:4D-7 to the DHS Commissioner. DMAHS is the DHS agency that administers the Medicaid program. N.J.S.A. 30:4D-5, -7; N.J.A.C. 10:49-1.1(a). Accordingly, DMAHS is responsible for safeguarding the interests of the New Jersey Medicaid program and its beneficiaries, N.J.A.C. 10:49-11.1(b), and is required to manage the State's Medicaid program in a

fiscally responsible manner.  See Dougherty v. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 91 N.J. 1, 5 (1982).

CWAs, like MCDSS, evaluate Medicaid eligibility.  N.J.S.A. 30:4D-7a; N.J.A.C. 10:71-2.2(c), -3.15.  Eligibility is established based on the legal requirements of the program that include income and resource eligibility standards for all applicants.  N.J.A.C. 10:70-4.1 to -5.4, :71-3.15, -4.1 to -5.9. A "resource" is "real or personal property . . . which could be converted to cash to be used for [the applicant's] support and maintenance."  N.J.A.C. 10:71-4.1(b), :70-5.3(a).  The resource must be "available" to the applicant and is deemed "available" when "[t]he person has the right, authority[,] or power to liquidate real or personal property[,] or his or her share of it."  N.J.A.C. 10:71-4.1(c)(1), :70-5.3(a).  An applicant's eligibility is postponed until all of the available assets, except those that are exempt, have been "spent down" to the eligibility limits, N.J.A.C. 10:70-6.1(a), and participation in the Medicaid Only program must be denied if the total value of an individual's resources exceeds $2000.  N.J.A.C. 10:71-4.5(c).

For their part, applicants are required to "[c]omplete, with assistance from the CWA if needed, any forms required by the CWA as a part of the application process."  N.J.A.C. 10:71-2.2(e)(1).  "The process of establishing eligibility involves a review of the application for completeness, consistency, and

11

reasonableness." N.J.A.C. 10:71-2.9. Applicants must provide the CWA with verifications that are identified for the applicant, and must "[a]ssist the CWA in securing evidence that corroborates his or her statements." N.J.A.C. 10:71-2.2(e)(2). The applicant's statements in the application are evidence and must substantiate the application with corroborative information from pertinent sources. N.J.A.C. 10:71-3.1(b). "Incomplete or questionable statements shall be supplemented and substantiated by corroborative evidence from other pertinent sources, either documentary or non[-]documentary." Ibid. If the applicant's resource statements are questionable or the identification of resources is incomplete, "the CWA shall verify the applicant's resource statements through one or more third parties." N.J.A.C. 10:71-4.1(d)(3).

The CWA is also required to process the application in a timely manner. See 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 435.911(c)(1); N.J.A.C. 10:71-2.3. It must send each applicant written notice of the agency's decision on the application and provide "prompt notification to ineligible persons of the reason(s) for their ineligibility" and "their right to a fair hearing." N.J.A.C. 10:71-2.2(c)(1), (5). See 42 C.F.R. § 435.917; N.J.A.C. 10:71-8.3. "Eligibility must be established in relation to each legal requirement to provide a valid basis for granting or denying medical assistance," N.J.A.C. 10:71-3.1(a), and the

A-4398-16T1

CWA should deny applications when applicants fail to timely provide verifications.  See N.J.A.C. 10:71-2.2(e), -2.9, -3.1(b).

However, N.J.A.C. 10:71-2.3(c) recognizes that

> there will be exceptional cases where the proper processing of an application cannot be completed within the [forty-five/ninety]-day period.[3]  Where substantially reliable evidence of eligibility is still lacking at the end of the designated period, the application may be continued in pending status.  In each such case, the CWA shall be prepared to demonstrate that the delay resulted from one of the following:
>
> 1.  Circumstances wholly within the applicant's control;
>
> 2.  A determination to afford the applicant, whose proof of eligibility has been inconclusive, a further opportunity to develop additional evidence of eligibility before final action on his or her application;
>
> 3.  An administrative or other emergency that could not reasonably have been avoided; or
>
> 4.  Circumstances wholly outside the control of both the applicant and CWA.

Thus, the regulations clearly establish that an applicant must provide sufficient information and verifications to the agency in a timely manner to

---

[3]  The maximum period to process an application for the aged is forty-five days; for the disabled or blind, ninety days.  N.J.A.C. 10:71-2.3(a).

allow it to determine eligibility, and corroborate the information submitted in support of the application. Here, MCDSS requested specific verifications from V.W. that were not provided in a timely manner. Because V.W. failed to provide the requested verifications and failed to satisfy the requirements imposed on Medicaid applicants by N.J.A.C. 10:71-2.2(e) and N.J.A.C. 10:71-3.1(b), the denial of V.W.'s Medicaid application was grounded in the applicable regulations. MCDSS never requested a spreadsheet, but requested that the information be presented in a comprehensible manner as permitted under the regulations. Given the deference we accord the Director's actions, and having determined that they are supported by sufficient credible evidence in the record, we conclude the decision was neither arbitrary, capricious nor unreasonable, and we reject V.W.'s claims to the contrary.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION