**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0698-17T1

L.K.,

      Petitioner-Appellant,

v.

DIVISION OF MEDICAL ASSISTANCE
AND HEALTH SERVICES, and CAMDEN
COUNTY BOARD OF SOCIAL SERVICES,

      Respondents-Respondents.

_____

Submitted September 12, 2018 – Decided  September 25, 2018

Before Judges Messano and Gooden Brown.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

SB2, Inc., attorneys for appellant (John Pendergast, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Division of Medical Assistance and Health Services (Melissa H. Raksa, Assistant Attorney General, of counsel; Marie Soueid, Deputy Attorney General, on the brief).

PER CURIAM

L.K. appeals from the August 21, 2017 final agency decision of the Department of Human Services (DHS), Division of Medical Assistance and Health Services (DMAHS), adopting the Administrative Law Judge's (ALJ) initial decision. The ALJ affirmed the Camden County Board of Social Services' (CCBSS) denial of L.K.'s application for Medicaid nursing-home benefits based on L.K.'s failure to provide financial verifications necessary to determine eligibility in accordance with N.J.A.C. 10:71-2.2(e)(2). We affirm.

After L.K.'s application for Skilled Nursing Home Medicaid benefits was denied, L.K. appealed the denial to DMAHS, and the matter was transferred to the Office of Administrative Law for a hearing as a contested case. N.J.S.A. 52:14B-1 to -15; N.J.S.A. 52:14F-1 to -13. At the hearing conducted on May 1, 2017, the ALJ made the following factual findings, as stipulated by the parties.

On February 4, 2016, after L.K.'s representative filed an application for Nursing Home Medicaid benefits, CCBSS provided the representative with a "pending letter" and a checklist of required documents to be returned within thirty days. Among the list of required documents was proof of all resources from 2011 to present, including American Funds account statements. Five months later, on July 22, 2016, a second "pending letter" was sent by CCBSS

A-0698-17T1

seeking outstanding documentation by August 11, 2016, including the American Funds account statements. On September 6, 2016, CCBSS granted a third extension for an additional ten days after receiving an email from L.K.'s representative attaching some American Funds account statements and indicating that the remaining documents were forthcoming.

On September 19, 2016, after L.K.'s representative failed to supply the missing statements, CCBSS denied L.K.'s application on the ground that L.K. failed to assist CCBSS by providing the requested documentation. At the time, CCBSS did not have access to any electronic asset verification system (AVS) or the Public Assistance Reporting and Information System (PARIS). On September 20, 2016, the day after CCBSS denied the application, L.K.'s representative sent CCBSS via facsimile transmission the outstanding America Funds statements from 2011 through 2015.

On July 11, 2017, the ALJ issued an initial decision affirming CCBSS's determination. The ALJ found that L.K. failed to timely provide the necessary verifications for CCBSS to make an eligibility determination. The ALJ rejected L.K.'s contention that N.J.A.C. 10:71-4.1(d)(3), N.J.A.C. 10:71-4.2(b)(3) and 42 C.F.R. § 435.945 required CCBSS to use its own efforts to verify L.K.'s resources through third parties. The ALJ explained:

A-0698-17T1

Under [L.K.'s] interpretation, the burden of establishing eligibility is shifted onto [CCBSS]. Such an interpretation is contrary to [N.J.A.C.] 10:71-2.2 and [N.J.A.C.] 10:71-3.1(b) - both of which require an applicant to substantiate their application with corroborative evidence from pertinent sources in support of their application for eligibility.

In this case, [CCBSS] issued three pending letters . . . granting three extensions to allow [L.K.] to provide the outstanding documentation. The third extension was granted after receiving an email from [L.K.'s] representative wherein additional time was requested to obtain the remaining documents which were expected the following day. As of two weeks later, the outstanding documents had not been provided[,] and on September 19, 2016, [CCBSS] denied [L.K.'s] application for failure to provide the missing American Funds statements.

The ALJ acknowledged that the regulations authorized the extension of the forty-five-day and ninety-day time frames for determining eligibility for aged cases and blind and disabled cases, respectively, N.J.A.C. 10:71-2.3(a), "when 'documented exceptional circumstances arise' preventing the processing of the application within the prescribed time limits," N.J.A.C. 10:71-2.3(c). However, the ALJ concluded that "[t]here [was] nothing in the record to demonstrate that there were exceptional circumstances warranting additional time to provide the requested documentation."

The ALJ also rejected L.K.'s argument "that New Jersey was required to use AVS in 100% of all Medicaid applications since 2013 and that she should [not] be penalized for New Jersey's violation of federal law." The ALJ pointed out that:

> New Jersey's AVS was not implemented until July 2016 and at the time of [L.K.'s] application, [CCBSS] did not have access to the system or [to] the PARIS. Moreover, there is some question as to whether the information sought, specifically verification of investment accounts or spousal resources, would have been available had the AVS been available.

Thereafter, the Director of DMAHS adopted the ALJ's decision, concurring that "there [was] nothing in the state or federal law that either excuse[d] [L.K.] from her obligation to obtain documents needed to verify her eligibility or require[d] CCBSS to obtain documents not available through the [AVS]." This appeal followed.

On appeal, L.K. renews her arguments that CCBSS violated federal law by failing to use the AVS and violated state law by failing to assist L.K. in completing her Medicaid application. L.K. also contends that the ALJ's and Director's failure to conduct a de novo review of "the American Funds statements that L.K. provided on September 20, 2016" and direct CCBSS to

issue an updated eligibility notice "renders the final agency decision arbitrary, capricious, and unreasonable." We disagree.

"[Our] review of an agency's determination is limited in scope." K.K. v. Div. of Med. Assistance & Health Servs., 453 N.J. Super. 157, 160 (App. Div. 2018) (quoting Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009)). "In administrative law, the overarching informative principle guiding appellate review requires that courts defer to the specialized or technical expertise of the agency charged with administration of a regulatory system." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). We are thus bound to uphold the administrative agency decision "unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." Ibid. (citing In re Herrmann, 192 N.J. 19, 28 (2007)).

In fact, "[w]here [an] action of an administrative agency is challenged, 'a presumption of reasonableness attaches to the action . . . and the party who challenges the validity of that action has the burden of showing that it was arbitrary, unreasonable or capricious.'" Barone v. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 210 N.J. Super. 276, 285 (App. Div. 1986),

A-0698-17T1

aff'd, 107 N.J. 355 (1987) (quoting Boyle v. Riti, 175 N.J. Super 158, 166 (App. Div. 1980)). "Deference to an agency decision is particularly appropriate where interpretation of the Agency's own regulation is in issue." I.L. v. N.J. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 389 N.J. Super. 354, 364 (App. Div. 2006); see also Estate of F.K. v. Div. of Med. Assistance & Health Servs., 374 N.J. Super. 126, 138 (App. Div. 2005) (indicating that we give "considerable weight" to the interpretation and application of regulations by agency personnel within the specialized concern of the agency). "On the other hand, an appellate court is 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting Mayflower Sec. Co. v. Bureau of Sec. in Div. of Consumer Affairs of Dep't of Law & Pub. Safety, 64 N.J. 85, 93 (1973)).

"Medicaid was created by Congress in 1965 to 'provide medical services to families and individuals who would otherwise not be able to afford necessary care.'" S. Jersey Family Med. Ctrs., Inc. v. City of Pleasantville, 351 N.J. Super. 262, 274 (App. Div. 2002) (quoting Barney v. Holzer Clinic Ltd., 110 F.3d 1207, 1210 (6th Cir. 1997)). The Federal Government shares the costs of medical assistance with States that elect to participate in the Medicaid program. Mistrick

A-0698-17T1

v. Div. of Med. Assistance & Health Servs., 154 N.J. 158, 165-66 (1998) (citing Atkins v. Rivera, 477 U.S. 154, 156-57 (1986)). New Jersey elected to participate in the federal Medicaid program pursuant to the New Jersey Medical Assistance and Health Services Act. N.J.S.A. 30:4D-1 to -19.5.

Eligibility for Medicaid in New Jersey is governed by regulations adopted in accordance with the authority granted by N.J.S.A. 30:4D-7 to the DHS Commissioner. DMAHS is the DHS agency that administers the Medicaid program. N.J.S.A. 30:4D-5, -7; N.J.A.C. 10:49-1.1(a). Accordingly, DMAHS is responsible for safeguarding the interests of the New Jersey Medicaid program and its beneficiaries, N.J.A.C. 10:49-11.1(b), and is required to manage the State's Medicaid program in a fiscally responsible manner. See Dougherty v. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 91 N.J. 1, 5 (1982).

County welfare agencies (CWAs), like CCBSS, evaluate Medicaid eligibility. N.J.S.A. 30:4D-7a; N.J.A.C. 10:71-2.2(c), -3.15. Eligibility is established based on the legal requirements of the program that include income and resource eligibility standards for all applicants. N.J.A.C. 10:70-4.1 to -5.4, :71-3.15, -4.1 to -5.9. For their part, applicants are required to "[c]omplete, with assistance from the CWA if needed, any forms required by the CWA as a part

of the application process." N.J.A.C. 10:71-2.2(e)(1). Applicants must provide the CWA with verifications that are identified for the applicant, and must "[a]ssist the CWA in securing evidence that corroborates his or her statements." N.J.A.C. 10:71-2.2(e)(2).

The applicant's statements in the application are evidence and must substantiate the application with corroborative information from pertinent sources. N.J.A.C. 10:71-3.1(b). "Incomplete or questionable statements shall be supplemented and substantiated by corroborative evidence from other pertinent sources, either documentary or non[-]documentary." Ibid. If the applicant's resource statements are questionable or the identification of resources is incomplete, "the CWA shall verify the applicant's resource statements through one or more third parties." N.J.A.C. 10:71-4.1(d)(3).

In turn, the CWA is required to process the application in a timely manner. See 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 435.911(c)(1); N.J.A.C. 10:71-2.3. It must send each applicant written notice of the agency's decision on the application and provide "prompt notification to ineligible persons of the reason(s) for their ineligibility" and "their right to a fair hearing." N.J.A.C. 10:71-2.2(c)(1), (5). See 42 C.F.R. § 435.917; N.J.A.C. 10:71-8.3. "The process of establishing eligibility involves a review of the application for completeness,

consistency, and reasonableness." N.J.A.C. 10:71-2.9. "Eligibility must be established in relation to each legal requirement to provide a valid basis for granting or denying medical assistance," N.J.A.C. 10:71-3.1(a), and the CWA should deny applications when applicants fail to timely provide verifications. See N.J.A.C. 10:71-2.2(e), -2.9, -3.1(b).

However, N.J.A.C. 10:71-2.3(c) recognizes that "there will be exceptional cases where the proper processing of an application cannot be completed within the [forty-five/ninety]-day period."  In such cases, "the application may be continued in pending status" provided the CWA demonstrates that the delay resulted from "[c]ircumstances wholly within the applicant's control[,]" "[a] determination to afford the applicant . . . a further opportunity to develop additional evidence of eligibility before final action on his or her application[,]" "[a]n administrative or other emergency that could not reasonably have been avoided[,]" or "[c]ircumstances wholly outside the control of both the applicant and CWA." Ibid.

Thus, the regulations clearly establish that an applicant must provide sufficient information and verifications to the CWA in a timely manner to allow it to determine eligibility, and corroborate the information submitted in support of the application.  Otherwise, the application may be denied.  Here, despite

working with L.K.'s representative for over seven months and granting three extensions to obtain the necessary documents, the documents were not provided to CCBSS by the deadline.

We agree with the ALJ's and the Director's rejection of L.K.'s reliance on federal regulations to shift the burden to obtain the requested verifications to establish eligibility to CCBSS. Contrary to L.K.'s assertion, the controlling regulations do not require that either CCBSS or DMAHS obtain all application information on their own, see 42 C.F.R. § 435.948(a), or preclude a state Medicaid agency from obtaining information directly from the applicant. See 42 C.F.R. § 435.952(c). Rather, the regulations require that the state Medicaid agency obtain "information related to eligibility for Medicaid" through "an electronic service" established by "[t]he Secretary . . . through which States may verify certain information with, or obtain such information from, Federal agencies and other data sources," to "the extent that information . . . is available . . . ." 42 C.F.R. § 435.949. Thus, CCBSS was not obligated to obtain information pertaining to L.K.'s investment account that was not available from the AVS. See 42 C.F.R. § 435.952(c).

We are also unpersuaded by L.K.'s contention that the ALJ and the Director erred by failing to consider evidence which she produced for the first

time following the September 19, 2016 denial of benefits. The issue before the ALJ and the Director was whether L.K. timely provided the requested information as of September 19, 2016. Thus, verifications submitted following CCBSS's denial were irrelevant to the issue before the ALJ and the Director. Given the deference we accord the Director's actions, and having determined that they are supported by sufficient credible evidence in the record, we conclude the decision was neither arbitrary, capricious nor unreasonable, and we reject L.K.'s claims to the contrary.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION